FILED
2015 May-28  AM 10:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **OWNERS INSURANCE COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Civil Action No. 5:14-cv-00147-CLS** |
| | ) | |
| **ALABAMA POWERSPORT AUCTION, LLC, and JAMES WIESE, as natural father of Matthew Hunter Wiese, deceased,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDERS

Plaintiff, Owners Insurance Company, seeks a judgment declaring that it has no duty to either defend or indemnify defendant Alabama Powersport Auction, LLC, for claims asserted against that entity by defendant James Wiese in the lawsuit pending in the Circuit Court of Limestone County, Alabama, as Civil Action No. 10-CV-900146, and styled "*James Wiese, as natural Father of Matthew Hunter Wiese, a Minor, Deceased v. Alabama Powersport Auction, LLC.*"[1]  The action presently is before the court on cross-motions for summary judgment filed by Owners Insurance Company and James Wiese.[2]  Following consideration of the pleadings, briefs,

---

[1] *See* doc. no. 1 (Federal Complaint); doc. no. 20-7 (State Court Complaint and Amended Complaint).

[2] *See* doc nos. 17, 18.

evidentiary submissions, and oral arguments of counsel, this court concludes that

Owners's motion should be denied, and Weise's motion should be granted in part and

denied in part.

## I. FACTUAL BACKGROUND

The following facts are not disputed.[3]  The Alabama Supreme Court found in

an opinion entered on an interlocutory appeal from the underlying state-court action

that defendant Alabama Powersport Auction, LLC ("APA"), was an entity engaged

in the business of selling at auction

> various consumer goods including, but not limited to, go-carts [.]  APA
> regularly auctioned motorcycles and golf carts, among other recreational
> vehicles.  In fact, the word "Powersport" in APA's name was because
> "the main things that [APA] sold were four-wheelers, boats,
> motorcycles, that type of thing."  Generally, all the goods APA sold
> were on consignment to APA from the owners of the goods; the owners
> of the goods agreed to pay APA a commission of 10% to 15% of the
> price APA was able to acquire at auction from a purchaser of the goods.

*Alabama Powersport Auction, LLC v. Wiese*, 143 So. 3d 713, 714 (Ala. 2013)

(plurality opinion) (first alteration supplied, second alteration in original).

Defendant James Wiese attended an auction conducted by APA on August 27,

2005, and purchased a Model 3206 "Yerf Dog Go-Cart" that had been consigned to

APA by non-party "FF Acquisition Corp., doing business as Flexible Flyer."

However, "Wiese was not aware that FF Acquisition had manufactured the go cart."

---

[3] *Compare* doc. no. 17-1 (Owners's Summary Judgment Brief), at 2–7, *with* doc. no. 23
(Wiese's Response to Owners's Summary Judgment Motion), at 3.

*Id*. at 714-15.[4]

> Soon after purchasing the go-cart, Wiese discovered that the engine would not operate for more than a few minutes at a time. After several failed attempts to repair the go-cart, Wiese stored the go-cart in his garage for almost two years. In September 2007, Wiese repaired the go-cart. On September 17, 2007, [James Wiese's minor son, Matthew Hunter Wiese,] was riding the go-cart and had an accident in which Matthew hit his head on the ground causing a brain injury that resulted in his death on March 6, 2010[, some two years and five months later].

*Id*. at 715 (alterations supplied).

James Wiese commenced a wrongful death action in the Circuit Court for Limestone County, Alabama, on August 19, 2010.[5]  By that date, however, FF Acquisition Corp., doing business as Flexible Flyer, had sought bankruptcy

---

[4] On June 21, 2005, prior to the date of the auction at which James Wiese purchased the go-cart leading to the underlying state-court action and the present controversy, the United States Consumer Products Safety Commission announced a recall of Model 3206 "Yerf Dog Go-Carts" (among other models listed). According to the announcement ("Release # 05-205"), the manufacturer had "received five reports of the suspension assembly cracking and causing the rider to lose control, including reports of bruises and head and back injuries." Consumers were directed to cease using the recalled products immediately, and the announcement stated: "It is illegal to resell or attempt to resell a recalled consumer product." The announcement concluded with this statement: "*The company is out of business and contact information is no longer available*." *See* www.cpsc.gov/en/Recalls/2005 (emphasis supplied) (last visited May 19, 2015).

[5] *See* doc. no. 20-7 (State Court Complaint and Amended Complaint), at ECF 2-3. "ECF" is the acronym for "Electronic Case Filing," a system that allows parties to file and serve documents electronically. *See Atterbury v. Foulk*, No. C-07-6256 MHP, 2009 WL 4723547, at *6 n.6 (N.D. Cal. Dec. 8, 2009). Bluebook Rule 7.1.4 *permits* citations to the "page numbers generated by the ECF header." *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 257 n.5 (D. D.C. 2011) (citing *The Bluebook: A Uniform System of Citation* R. B. 7.1.4, at 21 (Columbia Law Review Ass'n *et al.*, 19th ed. 2010)). Even so, *The Bluebook* recommends "against citation to ECF pagination in lieu of original pagination." *Wilson*, 772 F. Supp. 2d at 257 n.5. Thus, unless stated otherwise, this court will cite the original pagination in the parties' pleadings. When the court cites to pagination generated by the ECF header, however, it will, as here, precede the page number with the acronym "ECF."

protection.[6]  Consequently, Wiese's claims were asserted against only APA.

Wiese's amended state-court complaint contained two counts.  Count One was based on Alabama's Wrongful Death statutes, Ala. Code §§ 6-5-391 and 6-5-410 (1975),[7] and alleged that the wrongful act giving rise to the cause of action[8] was APA's breach of an implied warranty of merchantability that arose from the sale of

---

[6] FF Acquisition Corp., doing business as Flexible Flyer, experienced significant financial problems in 2005.  Not only were its go-carts subjected to a substantial recall due to defective ball joints, *see supra* note 4, but three of its major customers deferred purchasing $5,000,000 in swing sets.  Another important customer withheld payments for merchandise that had already shipped.  As a result, the company was compelled to file for bankruptcy protection on September 9, 2005, in the United States Bankruptcy Court for the Northern District of Mississippi.  *See In re Flexible-Flyer Liquidating Trust f/k/a FF Acquisition Corp. d/b/a Flexible-Flyer*, No. 05-16187-JDW (Bankr. N.D. Miss. Aug. 7, 2013) (slip op. doc. no. 1672 closing Chapter 11 case); *see also In re FF Acquisition Corp. d/b/a Flexible-Flyer*, 423 B.R. 502, 503-504 (Bankr. N.D. Miss. 2010).

[7] *See* doc. no. 20-7 (State Court Complaint and Amended Complaint), at ECF 7-8; *Alabama Powersport Auction, LLC v. Wiese*, 143 So. 3d 713, 714 (Ala. 2013) (Parker, J., plurality opinion).

[8] Section 6-5-410 defines Alabama's general cause of action for the wrongful killing of an individual, and provides, in pertinent part, that:

> (a)   A personal representative may commence an action and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama . . . for *the wrongful act*, omission, or negligence of any . . . corporation . . . *whereby the death of the testator or intestate was caused*, provided the testator or intestate could have commenced an action for the wrongful act, omission, or negligence if it had not caused death.

Ala. Code § 6-5-410(a) (emphasis supplied).  Section 6-5-391 specifically defines a cause of action that accrues upon the wrongful killing of a minor, and its pertinent provisions read as follows:

> (a)   When the death of a minor child is caused by *the wrongful act*, omission, or negligence of any person, persons, or corporation . . . the father . . . may commence an action.

> (b)   An action under subsection (a) for the wrongful death of the minor shall be a bar to another action either under this section or under Section 6-5-410.

Ala. Code § 6-5-391 (emphasis supplied).

the go-cart.[9] *See*, *e.g.*, Ala. Code § 7-2-314 (1975).[10]

Count Two of the amended complaint also asserted a claim for breach of an implied warranty of merchantability independent of Weise's wrongful-death claim, and sought compensatory damages.  Specifically, Weise alleged that APA

is liable for the injuries and damages sustained by Plaintiff's decedent based on a breach of the implied warranty of merchantability.

18.    The Plaintiff claims compensatory damages for the injuries suffered by the Plaintiff's decedent, Matthew Hunter Wiese, between the time of his injury and his death pursuant to *Benefield v. Aquaslide 'N' Drive Corp.*, 406 So. 2d 873 (Ala. 1981).[11]

---

[9] *See* doc. no. 20-7 (State Court Complaint and Amended Complaint), at ECF 7-8; *see also Alabama Powersport*, 143 So. 3d at 716.

[10] Alabama Code § 7-2-314 is part of Alabama's version of the Uniform Commercial Code, and provides, in pertinent part, that:

(1)    Unless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2)    Goods to be merchantable must be at least such as: . . . (c) Are fit for the ordinary purposes for which such goods are used; . . . .

Ala. Code § 7-2-314 (1975).

[11] At common law, both a cause of action (the right of a person to commence a suit against another party) and an action then pending in a court of law ended upon the death of the plaintiff. Alabama Code § 6-5-42 allows for **revival** of an action commenced prior to the plaintiff's death, and, **survival** of certain causes of action in favor of and against personal representatives of a deceased person:  *i.e.*,

In all proceedings not of an equitable nature, all claims upon which an action has been filed *and all claims upon which no action has been filed on a contract, express or implied*, and all personal claims upon which an action has been filed, except for injuries to the reputation, *survive in favor of and against personal representatives*; and all personal claims upon which no action has been filed survive against the personal representative of a deceased tort-feasor.

5

19.    Defendant's breach proximately caused the Plaintiff's decedent, Matthew Hunter Wiese, a Minor, to suffer the following injuries and damages, to-wit:

(a)    Plaintiff's decedent suffered permanent physical injuries;

(b)    Plaintiff's decedent suffered physical pain and mental anguish; and

(c)    Plaintiff's decedent has been caused to incur medical, doctor and drug expenses in the treatment of his injuries[.]

Doc. no. 20-7 (State Court Complaint and Amended Complaint), at ECF 8 (footnote and alteration supplied).

APA's motion for summary judgment on both counts of Weise's amended complaint was denied by the state trial court.  APA's petition for interlocutory appeal from the trial court's adverse ruling was granted by the Alabama Supreme Court, which unanimously concluded that "a breach of warranty claim cannot be maintained under Alabama's wrongful-death statute." *Alabama Powersport*, 143 So. 3d at 716.[12]

---

Ala. Code § 6-5-462 (1975) (emphasis supplied).  The case cited in paragraph 18 of James Wiese's amended state-court complaint, *Benefield v. Aquaslide 'N' Drive Corp.*, 406 So. 2d 873 (Ala. 1981), turned upon the foregoing statute, and held that the personal representative of a deceased person's estate could recover compensatory damages for the injuries suffered by the decedent prior to death under a breach of warranty (contract) claim.  *See, e.g.*, *id.* at 876; *Alabama Powersport*, 143 So. 3d at 720 n.3.  Specifically, the Court held that "[t]he breach of warranty (contract) claim is a separate and distinct claim from the wrongful death (tort) claim and seeks compensatory damages only, not for the wrongful death of the decedent but for the injuries suffered before his death." *Benefield*, 406 So. 2d at 876.  *See generally* Note, *Recovery for Personal Injuries Causing Death After* Benefield v. Aquaslide 'N' Drive Corp., 34 Ala. L. Rev. 339 (1983).

[12] That conclusion was dictated by the Court's opinion in *Geohagan v. General Motors Corp.*, 291 Ala. 167, 279 So. 2d 436 (Ala.1973), which held that

"no contractual cause of action for wrongful death is created by our Uniform

6

Consequently, the Court reversed the trial court's denial of summary judgment on the claim alleged in Count One of Wiese's amended complaint, and remanded the case with directions to dismiss the wrongful-death claim. *Id.* at 720.

On the other hand, a majority of the members of the State's highest court affirmed the trial judge's denial of summary judgment on the claim alleged in Count Two, but could not agree upon the rationale for doing so.[13] The plurality opinion held that an auctioneer (such as APA) selling consigned goods on behalf of another (here, FF Acquisition Corp. d/b/a Flexible Flyer) may be held liable as "a merchant-seller" under Alabama Code § 7–2–314 for breach of an implied warranty of merchantability,[14] *if* the auctioneer failed to disclose the principal for whom it sold

---

Commercial Code arising from a breach of warranty, and that actions for wrongful death can arise in this state and be processed only under our wrongful death acts." 291 Ala. at 172, 279 So. 2d at 440.   In so reaching this conclusion, this Court explained:

> "So far as can be determined from a reading of our Uniform Commercial Code, there is not one word, sentence, paragraph, clause, or section which in anywise even suggests that for the breach of an express or implied warranty in a contract any person is given a right to maintain an action for a wrongful death.   On the other hand, the precision with which the legislature has defined the purpose and policy of the act, limiting the same to commercial transactions, clearly demonstrates that it was not the intent of the legislature in enacting the Uniform Commercial Code to create a wrongful death action in case of a breach of warranty of the contract involved."

*Alabama Powersport*, 143 So. 3d at 716-17 (quoting *Geohagan*, 291 Ala. at 171, 279 So. 2d at 439).

[13] Justice Shaw concurred in the result, but did not join the rationale of the plurality opinion authored by Justice Parker for himself and Justices Murdock, Main, and Wise that is discussed in the remainder of this textual paragraph.  *See Alabama Powersport*, 143 So. 3d at 725.

[14] *See supra* note 10 for the pertinent provisions of Ala. Code § 7-2-314.

the goods.  *See id*. at 720, 723-24 (plurality opinion).  The considerations that framed

the plurality's analysis were stated as follows:

> An implied warranty of merchantability exists only if there is a
> "seller," as that term is defined in § 7–2–103, Ala. Code 1975, who is a
> "merchant with respect to goods of that kind." § 7–2–314(1), Ala. Code
> 1975.  Section 7–2–103(1)(d) defines a "seller" as "a person who sells
> or contracts to sell goods"; [and] § 7–2–104(1), Ala.Code 1975, defines
> "merchant" as follows:
>
>> "'Merchant' means a person who deals in goods of
>> the kind or otherwise by his occupation holds himself out
>> as having knowledge or skill peculiar to the practices or
>> goods involved in the transaction or to whom such
>> knowledge or skill may be attributed by his employment of
>> an agent or broker or other intermediary who by his
>> occupation holds himself out as having such knowledge or
>> skill."
>
> It is well settled that under Alabama law an auctioneer may be
> considered a merchant under Alabama's version of the UCC.  *See
> Bradford v. Northwest Alabama Livestock Ass'n*, 379 So. 2d 609, 611
> (Ala. Civ. App. 1980) (holding that a livestock auctioneer was a
> merchant because it "was in the business of selling cattle to prospective
> buyers and had been so engaged for a number of years and held itself out
> as having the knowledge and skill to conduct such sales").  *However, the
> parties have not directed this Court's attention to any Alabama
> precedent concerning whether an auctioneer selling goods on behalf of
> a consignor* — and, thus, not holding title to the goods being sold, *see
> Bischoff v. Thomasson*, 400 So. 2d 359 (Ala. 1981) (noting that a
> consignee does not hold title to the goods consigned to it by a
> consignor; title passes from the consignor to the buyer) — *may be
> considered a seller under Alabama's version of the UCC and held liable
> as a merchant-seller for a breach of an implied warranty of
> merchantability*.

*Alabama Powersport*, 143 So. 3d at 721 (alteration and emphasis supplied).

Addressing that question of first impression under Alabama law, the plurality found

the rationale for the decision of the Tenth Circuit Court of Appeals in *Powers v.*

*Coffeyville Livestock Sales Co.*, 665 F.2d 311 (10th Cir. 1981), to be persuasive.  The

opinion in that case turned upon Kansas's version of the Uniform Commercial Code,

which is identical to Alabama's enactment, and held that:

> "Under traditional agency law, an agent [such as an auctioneer selling goods on consignment for another] is liable as if it were the principal when the agent acts for an undisclosed principal.  This rule applies whether the agent holds itself out as principal or only as agent but does not disclose the identity of its principal.  *Bruce v. Smith*, 204 Kan. 473, 464 P.2d 224 (1970); *Restatement (Second) of Agency* §§ 321–22 (1958).  Applying this common law rule to auctioneers, courts in other jurisdictions have held that an auctioneer is liable as a seller if the auctioneer fails to disclose to the buyer the identity of the principal.  *E.g.*, *Universal C.I.T. Credit Corp. v. State Farm Mutual Automobile Insurance Co.*, 493 S.W.2d 385, 390 (Mo. Ct. App. 1973); *Itoh v. Kimi Sales, Ltd.*, 74 Misc. 2d 402, 345 N.Y.S. 2d 416, 420 (Civ. Ct. N.Y. 1973); *Hagen v. Brzozowski*, 336 S.W.2d 213, 215–16 (Tex. Civ. App. 1960).  The UCC did not alter the common law application of agency principles to sales made by an auctioneer.  *See* Kan. Stat. Ann. § 84–1–103.  We believe the Kansas courts would hold that an auctioneer who fails to disclose the identity of its principal and who regularly auctions merchandise of a particular kind is, with regard to those goods, a merchant seller within the coverage of section 84–2–314."

*Alabama Powersport*, 143 So. 3d at 722-23 (quoting *Powers*, 665 F.2d at 312-13)

(alteration supplied, footnote omitted).[15]

_____

[15] The omitted footnote reads as follows:

> *Accord* Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* § 2–103:37 (3d ed. 2012) (citing *Powers*, *supra*) ("If the auctioneer does not disclose the identity of the principal, the auctioneer is the seller.  Although the

Based upon the common-law agency principles recited in the foregoing opinion, as well as those set forth by the Alabama Supreme Court in *Abercrombie v. Nashville Auto Auction, Inc*., 541 So. 2d 516, 518 (Ala. 1989) (observing that an auctioneer may be liable as a seller under Ala. Code § 7–2–312 for a breach of the *warranty of title* if the auctioneer *fails to disclose to the buyer* the identity of the principal), the plurality opinion on interlocutory appeal from the underlying state court action held that "an auctioneer may be held liable as a merchant-seller for the implied warranty of merchantability under § 7–2–314 if the auctioneer fails to disclose the principal for whom the auctioneer is selling the goods."   *Alabama Powersport*, 143 So. 3d at 723-24.[16]   *Cf., e.g.*, *Welch v. Mitchell*, 351 So. 2d 911, 915 (Ala. Civ. App. 1977) (holding that "an auctioneer who acts for *a disclosed principal* will not be deemed liable for a defect in the title of the property sold") (emphasis supplied).   The present action followed.

---

auctioneer does not transfer title, he or she makes a contract of sale and, thus, comes within the definition of 'seller.' "); §§ 2–314:580 and 2–314:581 ("A sale by auction is a sale and consequently the same warranties arise when the sale is made through an auctioneer as when a sale is made directly by the principal. . . .  When the auctioneer sells without identifying the principal on whose behalf it is selling, the auctioneer has the status of a partially-disclosed agent, and is deemed the seller and is liable for any warranty, express or implied, that is involved in the sale."); and 12 Richard A. Lord, *Williston on Contracts* § 35:43, at 555 (4th ed. 2007) ("The rule of liability which ensues from a nondisclosure of the principal has been applied to hold a selling agent who does not disclose the principal to all the general liabilities of any other seller.").

*Alabama Powersport*, 143 So. 3d at 723 n.6.

[16] *See supra* note 10 for the pertinent language of Ala. Code § 7-2-314.

## II. DISCUSSION

Owners founded the jurisdiction of this court upon the parties' complete diversity of citizenship and the requisite amount in controversy. *See* doc. no. 1 (Federal Complaint) ¶¶ 1-5; 28 U.S.C. § 1332.[17]  Consequently, considerations of comity and the *Erie* doctrine compel this court to apply state substantive law, and federal procedural and evidentiary rules. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *see also*, *e.g.*, *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496-97 (1941); *National Distillers and Chemical Corp. v. Brad's Machine Products, Inc.*, 666 F.2d 492, 494-95 (11th Cir. 1982).

### A. The Insured's and Insurer's Respective Burdens of Persuasion

Under Alabama law, the insured (here, APA) *normally* bears the burden of establishing that a claim falls within the coverage of the policy. *See*, *e.g.*, *Chandler v. Alabama Mutual Insurance Co.*, 585 So. 2d 1365, 1367 (Ala.1991); *Employers Mutual Casualty Co. v. Mallard*, 309 F.3d 1305, 1307 (11th Cir. 2002) (citing *Life & Casualty Insurance Company of Tennessee v. Garrett*, 35 So. 2d 109, 111 (Ala. 1948)).  During oral argument, however, counsel represented that APA is no longer a viable entity.  Even though this court's internet research casts some doubt upon that

---

[17] Even though it is nowhere mentioned in the complaint, this court presumes that Owners seeks relief pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201.

assertion,[18] the Clerk's docket entries establish that APA was not served; and, but for the fact that Owners is providing a defense under reservation of rights, APA has not otherwise appeared by way of counsel or pleadings in this action.  Hence, the burden of proving that coverage existed under the terms of Owners's policy shifts to James Wiese, the party seeking to establish coverage.  *See*, *e.g.*, *Alabama Hospital Association Trust v. MASA*, 538 So. 2d 1209, 1216 (Ala. 1989).

On the other hand, *the insurer* (Owners) "bears the burden of proving the applicability of any policy exclusion."  *Acceptance Insurance Company v. Brown*, 832 So. 2d 1, 12 (Ala. 2001).

## B.   The Duties Arising Under a Policy of Liability Insurance

---

[18] A Google® search disclosed several listings for an entity named "Alabama Powersport Auction, LLC" in Athens, Alabama.  One website contained the following information:

> **Alabama Powersport Auction, LLC**
> Alabama Powersport Auction is one of the fastest growing auction Houses in the Southeast, and we invite you to join us for our next exciting event!  Convenient to all areas in North & Central Alabama, South & Central Tennessee, as well as Northeastern Mississippi, Alabama Powersport Auction is located only minutes west of Interstate 65 off Hwy. 72 in Athens.  Offering a HUGE selection of boats, ATV's, tools, cars, trucks, recreational vehicles, motorcycles, utility vehicles, jewelry, antiques and other furniture, Alabama Powersport Auction is your connection for a wide array of items to fill personal, business, and recreational needs.  During your visit to Alabama Powersport Auction, you will find plenty of restaurants, fueling stations, and hotel rooms in Athens and the immediate area.  Our facility features public restrooms, concessions, free parking, and 7:00 am early viewing on the day of sale.  Our auctions are held monthly, and we always have something NEW!  Don't miss a single event!

http://www.liveauctioneers.com/alabama-powersport-auction-llc (last visited May 19, 2015).  *See also* http://www.auctionzip.com/AL-Auctioneers/10724.html.

Liability insurance coverage includes separate duties: the duty to defend; and, the duty to indemnify. *See*, *e.g.*, *Porterfield v. Audubon Indemnity Co.*, 856 So. 2d 789, 791 (Ala. 2002). An insurance company's *duty to defend* is more extensive than its *duty to indemnify*. *See*, *e.g.*, *United States Fidelity & Guaranty Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985).

### 1.    The duty to defend

The question of whether an insurance company owes a duty to defend its insured from suit is determined by the language of the company's policy, *and by* the allegations in the complaint filed against the insured. *See*, *e.g.*, *Alfa Mutual Insurance Co. v. Morrison*, 613 So. 2d 381, 382 (Ala. 1993). Moreover, it is the factual allegations of the complaint, and not the "legal phraseology" or remedial theories undergirding those allegations, that is controlling. *Hartford Casualty Insurance Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1012 (Ala. 2005) ("Where facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action."). *See also*, *e.g.*, *Cotton States Mutual Insurance Co. v. Daniel*, No. 3:07–CV–843–WKW, 2008 WL 4999097, at *18 (M.D. Ala. Nov. 20, 2008) (Watkins, J.) ("To ascertain whether [an insurer] owes [its insured] a duty to defend, the court focuses on the factual allegations in the complaint, not on the legal theories

13

asserted.") (alterations supplied).

### a.   Was the underlying event an insurable "occurrence"?

The following provisions from the commercial general liability insurance policy issued by Owners to APA provide that coverage will be provided for "bodily injury" or "property damage" that is caused by an "occurrence":  a term defined as "*an accident*, including continuous or repeated exposure to substantially the same general harmful conditions."

**SECTION I — COVERAGES**

**COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.   Insuring Agreement**

> **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty *to defend* the insured against any "suit" seeking those damages. . . . .
> . . . .
>
> **b.**   This insurance applies to "bodily injury" and "property damages" only if:
>
> > **(1)**   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> > . . . .

**SECTION V – DEFINITIONS**

> . . . .

14.     "Occurrence" means *an accident*, including continuous or repeated exposure to substantially the same general harmful conditions.

Doc. no. 20-5 (Policy No. 054617-38227830-07), at 1, 19 (emphasis supplied).

### (*i*)     Owners's primary argument

Owners argues that the remedial theory supporting James Wiese's remaining claim in the underlying state-court action — breach of an implied warranty of merchantability — is a "contract claim"; and, therefore, that it is not covered by the terms of APA's policy which provides insurance only for an "occurrence," meaning "an accident": *i.e.*,

> Wiese's sole claim against Powersport Auction is that it breached the implied warranty of merchantability with regards to a go-cart he purchased at an auction held by Powersport Auction.  A claim of breach of warranty is a contract claim. *Geohagen v. General Motors Corp.*, 279 So.2d 436 (Ala. 1973).
>
> Matthew Wiese passed away prior to the filing of the underlying suit.  Therefore, the breach of warranty claim being made by Wiese must be purely contractual because an unfiled tort claim does not survive the death of the injured party. *Benefield v. Aquaslide 'N' Dive Corp.*, 406 So.2d 873 (Ala. 1981).  In fact, Wiese acknowledged this is in a brief he submitted to the Alabama Supreme Court in the underlying suit, stating:
>
> > *A breach of implied warranty is a contract claim.  While an unfiled claim sounding in tort will not survive the death of the person with the claim, a claim on a contract does survive the death of the injured party.* (Wiese's Brief at page 14).
>
> The insurance policy issued to Powersport Auction contains the following language:

I.    *Insuring Agreement*

*b.  This insurance applies to "bodily injury" and "property damage" only if:*

*(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory".*

The policy defines the term, "occurrence", as meaning, "an accident, including continuous or repeated exposure to substantially the same general harmful conditions".  Breach of warranty / contract is not an "occurrence" because it is not an accident.  *Prudential Property and Cas. Ins. Co. v. Boyle*, 305 Fed. Appx. 35 (3rd Cir. 2008) (Breach of an implied warranty is not an accident); *Nationwide Mut. Ins. Co. v. CPB International, Inc.*, 2007 WL 4198173 (M.D. Penn. 2007) (Breach of contract is not an occurrence).  There is no coverage for Wiese's claim because breach of warranty is not an accident, and therefore, not an occurrence.

Doc. no. 17-1 (Owners's Summary Judgment Brief), at 8-10 (emphasis in original).

> (**ii**)    *The Alabama Supreme Court's opinion in* Reliance Insurance Co. v. Gary C. Wyatt, Inc.

The Alabama Supreme Court's opinion in *Reliance Insurance Co. v. Gary C. Wyatt, Inc.*, 540 So. 2d 688 (Ala. 1988), appears to be the only binding precedent that addresses the question of whether a "contract claim" can be included within the standard definition of an "occurrence" in a commercial general liability insurance policy.[19]   In that case, a construction company, Gary C. Wyatt, Inc. ("Wyatt"),

---

[19] *Accord Auto-Owners Insurance Co. v. Toole*, 947 F. Supp. 1557, 1563 (M.D. Ala. 1996) (Thompson, J.) (observing that "[t]here is almost no Alabama law addressing if and when events giving rise to a contract dispute fall within the standard definition of [an] occurrence," and then proceeding to discuss the holding in *Reliance*) (alterations supplied).

engaged in a project that necessitated the rental of a crane from the Essex Crane Rental Corporation ("Essex").  One clause of the lease agreement required Wyatt to include Essex as an additional insured under Wyatt's general liability insurance policies.  Two days after Wyatt and Essex executed the lease agreement, Reliance Insurance Company ("Reliance") issued a general liability insurance policy to Wyatt, but "Essex was not included as an additional insured under [that] policy, nor did Wyatt request that Essex be listed as an additional insured. . . ." *Id.* at 689 (alteration supplied).   Five months after leasing the crane and procuring insurance from Reliance, one of Wyatt's employees, Robert Batson, was injured when the crane's boom fell and struck him.  Batson sued both Essex and Wyatt.  Essex then filed

> a third-party complaint, asserting a claim for breach of contract for Wyatt's failure to include Essex as an additional insured under its liability insurance policy as required by the lease.  Essex claimed Wyatt's failure to procure such insurance caused Essex to suffer damages as a "direct, foreseeable and proximate result of the breach of contract."

*Id.*[20]  When Wyatt subsequently made a demand for Reliance to provide a defense to (and indemnity for) Essex's third-party complaint, Reliance instituted a declaratory judgment proceeding in the Circuit Court for Jefferson County, Alabama.[21]  Reliance

---

[20] There is no explanation in the Alabama Supreme Court's opinion for Essex's decision to file a "third-party complaint" — as opposed to a *cross-claim* — against Wyatt for breach of the lease agreement.

[21] Interestingly, the suit filed by Robert Batson against Essex and Wyatt, and Essex's third-party complaint asserting a claim for breach of the lease agreement against Wyatt, were commenced in the United States District Court for the Northern District of Florida, and that court ultimately

17

argued that there was no coverage under its policy because "the claim against Wyatt is based on breach of contract, not an 'occurrence' resulting in bodily injury or property damage, and . . . Reliance did not undertake to insure Wyatt against breach of contract."  *Id*.  The state trial court entered judgment in favor of Wyatt, and Reliance appealed.  The Alabama Supreme Court reversed, saying that:

> The portion of Essex's complaint with which we are concerned in this appeal is predicated upon the following alleged breach of contract: "Wyatt failed to procure liability insurance as required . . . [and this] failure constitutes a breach of the lease agreement, and Essex has, and will, suffer damages as a direct, foreseeable, and proximate result of said breach."  *The breach of contract was the failure to procure liability insurance.  This is not an "occurrence" that results in bodily injury or property damage*.  Batson's injury may go to the issue of damages sustained by this breach of contract, but it is not the "occurrence" that causes the breach of contract.  *The contract had been breached, with or without Batson's injury. The "occurrence" in this case is the breach of contract rather than the bodily injury to Batson*.  We conclude that no coverage exists for the breach of contract, because the breach did not constitute an "occurrence" that resulted in bodily injury or property damage under the definitions within the policy, which was necessary to bring such claim within the policy coverage.  . . .

*Reliance Ins. Co*., 540 So. 2d at 690-91 (citations omitted, alteration in original, emphasis supplied).  As another judge in the Eleventh Circuit observed in a case that also required construction of the *Reliance* holding, it is difficult to lift from the foregoing statements "any overall principle or principles that might guide the court in resolving the issue presented in the instant case."  *Auto-Owners Insurance Co. v.*

---

"granted summary judgment in favor of Essex against Wyatt on the breach of contract claim." *Reliance Insurance Co. v. Gary C. Wyatt, Inc*., 540 So. 2d 688, 689 (Ala. 1988).

*Toole*, 947 F. Supp. 1557, 1564 (M.D. Ala. 1996) (Thompson, J.).

In addition, this court finds that *Reliance* is distinguishable.  That case turned upon the fact that the insured, Wyatt, had breached an express contractual promise, whereas the claim in the present action is predicated upon an obligation imposed by the law in the absence of an express representation or promise that the thing sold to James Wiese was fit for the ordinary purposes for which such goods are used.[22]

> (***iii***)   *The Alabama Supreme Court's plurality opinion in* Benefield v. Aquaslide 'N' Dive Corp.

The binding authority that ultimately provides the most guidance for a decision in the present action is the one upon which James Wiese's remaining claim was founded:  *Benefield v. Aquaslide 'N' Dive Corp.*, 406 So. 2d 873 (Ala. 1981).  The plaintiff's decedent in that case died nine days after suffering a spinal cord injury on a swimming pool sliding board manufactured by the defendant, Aquaslide.  Neither the deceased, nor anyone acting on his behalf, filed an action prior to his death.  The suit subsequently filed against Aquaslide by the personal representative of the decedent's estate contained a claim for wrongful death under the Alabama Extended Manufacturer's Doctrine and the wrongful death statute, as well as a separate count setting forth "a claim for breach of warranties, seeking recovery not for the death of

---

[22] *See*, *e.g.*, *Black's Law Dictionary* 1725 (9th ed. 2009) (defining *implied warranty* as:  "An obligation imposed by the law when there has been no representation or promise; esp., a warranty arising by operation of la because of the circumstances of a sale, rather than by the seller's express promise.").

the decedent, but for the pain and medical expenses suffered by him between the date of his injury and the date of his death." *Id*. at 874.  The trial court dismissed the claim for "breach of warranties" (presumably, the implied warranties of merchantability and fitness for a particular purpose).  *See id*.; Ala. R. Civ. P. 12(b)(6).  The Alabama Supreme Court accepted an interlocutory appeal from that ruling, and a majority of the Court reversed — even though, as in the opinion entered following interlocutory appeal from the underlying state-court action, the Justices could not agree on the rationale for doing so.[23]

The plurality opinion turned upon Alabama Code § 6-5-462, providing that "all claims upon which no action has been filed on a contract, express or implied, . . . survive in favor of . . . personal representatives,"[24] and held that:

> A contract action pursuant to § 6-5-462 survives in favor of the personal representative regardless of whether the decedent filed the action before his death.  The fact that the decedent dies as a result of the

---

[23] Justice Beatty authored the plurality's opinion for himself and Justices Faulkner, Embry, and Adams.  Justice Jones concurred specially, and filed a separate opinion.  Justice Shores dissented in an opinion joined by Chief Justice Torbert and Justice Maddox.  Justice Almon dissented without opinion.  *See Benefield v. Aquaslide 'N' Dive Corp*., 406 So. 2d 873, 876 (Ala. 1981).

[24] The full text of the quoted statute reads as follows:

> In all proceedings not of an equitable nature, all claims upon which an action has been filed and *all claims upon which no action has been filed on a contract, express or implied*, and all personal claims upon which an action has been filed, except for injuries to the reputation, *survive in favor of* and against *personal representatives*; and all personal claims upon which no action has been filed survive against the personal representative of a deceased tort-feasor.

Ala. Code § 6-5-462 (1975) (emphasis supplied).

injuries sued upon does not change this general rule. *Simmons* [*v. Clemco Industries*, 368 So.2d 509, 516 (1979) (holding, among other things, that "[o]rdinarily, contract actions do survive in favor of the personal representative, and the fact that plaintiff died as a result of the injuries sued upon does not change the general rule") (citation omitted)].

Aquaslide argues further that, even if the breach of warranty claim survives, plaintiff's exclusive remedy is under the wrongful death statute, § 6-5-410, Code of 1975. That is, Aquaslide appears to argue that the breach of warranty claim merges into the extended manufacturer's liability claim for wrongful death. The fallacy of that argument is that this plaintiff as well as future plaintiffs would then be barred from seeking any damages other than punitive damages for the death of the decedent. Should breaching manufacturers be allowed to escape liability for compensatory contract damages sustained by the decedent before his death merely because he dies as a result of the breach? We think not. The breach of warranty (contract) claim is a separate and distinct claim from the wrongful death (tort) claim and seeks compensatory damages only, not for the wrongful death of the decedent but for the injuries suffered before his death. It would be illogical to merge the two claims. We hold that it was error for the trial court to dismiss count three. That count does state a claim for which relief can be granted. The judgment therefore, must be, and is, reversed and this cause is remanded for further proceedings not inconsistent with this opinion.

*Benefield*, 406 So. 2d at 875-76 (alteration supplied).

There are obvious distinctions between the facts of *Benefield* and those of the present controversy. The defendant in *Benefield* was the manufacturer of the allegedly defective product that injured and ultimately caused the death of the plaintiff's decedent, while the defendant in the underlying state-court action (APA) was the intermediate seller between the manufacturer (FF Acquisition Corp. d/b/a

Flexible Flyer) and purchaser (James Wiese). Even so, that difference is of no moment, because APA failed to disclose that it was acting as a consignment agent for its undisclosed principal; and, as a matter of well-settled principles of agency law, it thereby stepped into the liability shoes of the manufacturer of the allegedly non-merchantable go-cart.

Indeed, it is the *similarities* between the *Benefield* case and this one that are dispositive. The breach of implied warranty ("contract") claims asserted in both cases arose from events that were classic "accidents" involving "bodily injury" to each state-court plaintiff's decedent. In both cases, "breach of implied warranty" was merely "the legal phraseology," or remedial theory, under which each state-court plaintiff alleged that the insured party should be held liable for compensatory damages for the "bodily injuries" inflicted upon the personal representative's decedent. *See, e.g., Hartford Casualty Insurance Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1012 (Ala. 2005) ("Where facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action."). *See also, e.g., Cotton States Mutual Insurance Co. v. Daniel*, No. 3:07–CV–843–WKW, 2008 WL 4999097, at *18 (M.D. Ala. Nov. 20, 2008) (Watkins, J.) ("To ascertain whether [an insurer] owes [its insured] a duty to defend, the court focuses on the factual

22

allegations in the complaint, not on the legal theories asserted.") (alterations supplied).

Consequently, this court looks through "the legal phraseology" to the events forming the basis of the underlying state-court action, and concludes that the claim *is based* upon an insured "occurrence." *See*, *e.g.*, *Auto-Owners Insurance Co. v. Toole*, 947 F. Supp. at 1564 (holding that, when "determining whether there is coverage, the court should look to the specific kind of . . . claim being asserted, *regardless* [of] *whether it is labeled a contract claim, a tort claim, or whatever*, and the purpose of the general liability policy from which coverage is sought") (alteration and emphasis supplied). *Cf. Employers Mutual Casualty Co. v. Smith Construction & Development, LLC*, 949 F. Supp. 2d 1159, 1173-74 (N.D. Ala. 2013).

Further, James Wiese's claim in the state-court action — that APA is liable for the bodily injuries suffered by his son as a result of the accidental wreck of the non-merchantable go-cart sold by APA to Wiese — falls within the purpose of general commercial liability insurance policies in Alabama: *that is*, protecting "an insured from bearing financial responsibility for unexpected and accidental damage to people or property." *Town & Country Property, L.L.C. v. Amerisure Insurance Co.*, 111 So. 3d 699, 707 (Ala. 2011).

Accordingly, this court finds that the complaint in the underlying, state-court

action alleges an "occurrence" that was the result of an "accident" that caused "bodily injury" and, therefore, the claim is covered by the terms of Owners's policy.

### b.    Does the contractual liability exclusion apply?

In addition to arguing that James Wiese's breach of implied warranty claim is not a covered "occurrence," Owners contends that the claim is excluded by the policy's "Contractual Liability" provision,[25] which states that the policy does not cover: "'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of *the assumption of liability in a contract or agreement*."  Doc. no. 20-5 (Policy No. 054617-38227830-07), at 2 (emphasis supplied).

Owners argues that claims for breach of an implied warranty of merchantability, which sound in contract rather than tort, fall within the contractual exclusions typical of commercial general liability insurance policies.[26]  Once again, Owners confuses the issue.

Under Alabama law, the purpose of contractual exclusions such as the present one is not to exclude liability for claims *sounding in contract* but, instead, to exclude an insured's liability to a third party that the insured *expressly assumed* in an *indemnity*, or *hold-harmless agreement*.  As the Fifth Circuit stated in a persuasive opinion, *Ingalls Shipbuilding v. Federal Insurance Co.*, 410 F.3d 214 (5th Cir. 2005),

---

[25] Doc. no. 17-1 (Owners's Summary Judgment Brief), at 13.

[26] *Id.* at 13–14.

24

courts "have consistently interpreted the phrase 'liability assumed by the insured under any contract' to apply only to indemnification and hold-harmless agreements, whereby the insured agrees to 'assume' the tort liability of another. This phrase does not refer to the insured's breaches of its own contracts." *Id.* at 222 (quoting 1 Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 7.05, at 460 (12th ed. 2004)).

The Alabama Supreme Court reached the same conclusion in *Townsend Ford, Inc. v. Auto-Owners Insurance, Co.*, 656 So. 2d 360 (Ala. 1995), holding that a contractual exclusion clause identical to the one at issue here

> "traditionally serve[s] to exclude 'indemnity' types of liability, whereby the liability itself was assumed, rather than warranty situations." The specific express warranty alleged to have been breached is that "[Townsend Ford] warrant[ed] that said automobile had in fact only been driven by a Ford manager" and the plaintiff alleged that "[Townsend Ford] breached said warranty by failing to deliver a conforming automobile." This warranty does not involve "the assumption of liability," but rather merely a representation. Insurers can plainly provide in their policies that coverage for breach of warranty claims is excluded if they so choose.

*Id*. at 364–65 (alterations in original) (quoting trial court opinion).

In like manner, the claim for breach of an implied warranty of merchantability asserted in the underlying state-court action "does not involve the 'assumption of liability'" under an express agreement. *Id.* at 365. Accordingly, the policy's "Contractual Liability" exclusion does not apply. *Cf.*, *e.g.*, *Dreis & Krump*

*Manufacturing Co. v. Phoenix Insurance Co.*, 548 F.2d 681, 684 (7th Cir. 1977) ("[T]his circuit has construed the coverage language in the endorsement 'liability assumed by him under any written contract' to mean *a specific written agreement between the insured and some third party* whereby the insured agrees to 'indemnify' the third party.") (alteration and emphasis supplied); *Smithway Motor Xpress, Inc. v. Liberty Mutual Insurance Co.*, 484 N.W. 2d 192, 196 (Iowa 1992) ("Liability assumed by an insured under [a contract] refers to the assumption of another's liability, such as an agreement to indemnify or hold another harmless.") (alteration supplied).

Owners cites several district court opinions interpreting Alabama law that reach a different conclusion.  For example, the Southern District of Alabama found in *Assurance Company of America v. Admiral Insurance Co.*, No. 10-0117-CG-C, 2011 WL 1897589 (S.D. Ala. May 18, 2011) (Granade, J.), that a breach of implied warranty claim fell within a policy's contractual exclusion because such actions "sound in contract as opposed to tort," and because the warranty at issue "would not exist were it not for" a construction contract.  *Id.* at *8.  That holding is not persuasive, however, because the district court did not address either the holding in *Townsend Ford*, or the assumption of liability language found in the contractual exclusion at issue here.

Another judge on this same court held, in *Owners Insurance Co. v. Shep Jones Construction, Inc.*, No. 08-AR-514-S, 2012 WL 1642169 (N.D. Ala. May 3, 2012) (Acker, J.), that

> Alabama courts have recognized that contractual liability exclusions identical to the one here operate to deny liability for "property damage" and "bodily injury" resulting from breach of contract. *See Carter v. Cincinnati Ins. Co.*, 435 So. 2d 42, 45 (Ala. 1983) (holding that there is no insurance coverage pursuant to a commercial general liability policy with a contractual liability exclusion, when the plaintiff only sought to recover for breach of an implied contract, because the claim "falls squarely within the clear and unambiguous terms of the exclusionary provision [ ]"); *Am. Nat. Prop. & Cas. Co. v. Blocker*, 165 F. Supp. 2d 1288, 1296–97 (S.D. Ala. 2001) (discussing *Carter* and holding same); *Ajdarondinni v. State Auto Mut. Ins. Co.*, 628 So. 2d 312, 313 (Ala. 1993) (equivalent contractual liability exclusion in commercial general liability policy; jury in underlying suit returned verdict solely on the claims for breach of contract; court held that because the policy "clearly excludes breach of contract claims from its coverage, insurer has no duty to pay the judgment").

*Shep Jones*, 2012 WL 1642169, at *6 (alteration in original). Judge Acker's opinion in *Shep Jones* accurately describes the holdings in *Carter* and *Ajdarondinni*: two cases in which the Alabama Supreme Court held that contractual exclusions in commercial general liability insurance policies exclude liability for breach of contract claims. Even so, the *Townsend Ford* decision was handed down after both *Carter* and *Ajdarondinni*, and represents the State Supreme Court's most recent statement of Alabama law governing the interpretation of such contractual exclusions.[27]

---

[27] In the same opinion, Judge Acker called into question the validity of the Alabama Supreme Court's holding in *Townsend Ford*, when observing that

The Southern District of Alabama's opinion in *Pennsylvania National Mutual Casualty Insurance Co. v. Saint Catherine of Siena Parish*, 16 F. Supp. 3d 1370 (S.D. Ala. 2014) (DuBose, J.), also sought to limit the holding in *Townsend Ford*.  In *Saint Catherine*, Judge DuBose essentially dismissed the "indemnity" language in the *Townsend Ford* holding as *dicta*, stating that the "ultimate conclusion" in *Townsend* was merely that the claim for breach of *an express warranty* at issue in that case did not fall within the insurance policy's contractual exclusion.  *See id.* at 1381. Accordingly, Judge DuBose held that, because the plaintiff in *Saint Catherine* did not rely on *an express warranty* claim as the basis for her claimed coverage, but instead upon *an implied warranty* claim, "the holding in *Townsend* [was] inapplicable." *Id.* at 1381–82 (alteration supplied).  This court does not agree.  The indemnity language in *Townsend Ford* is not *dicta*, because it was "essential to the judgment" of the Court.  *See Ex parte Williams*, 838 So. 2d 1028, 1031 (Ala. 2002) (defining "*dicta*" under Alabama law).  More importantly, it is readily apparent that the holding in

───────────────────────

ALLEN'S ALABAMA LIABILITY INSURANCE HANDBOOK notes that the court in *Townsend Ford* did not cite any authority for its refusal to extend the contractual liability exclusion to claims for breach of express warranty. § 10.02 at 215.  No other Alabama case has cited *Townsend Ford* for its interpretation of the contractual liability exclusion.

*Shep Jones*, 2012 WL 1642169 at *6.  Neither of those considerations is relevant, however, because "the Alabama Supreme Court is the *final* arbiter of Alabama law." *Ex parte James*, 836 So. 2d 813, 834 (Ala. 2002) (emphasis in original).  Until that Court revisits the issue, its holding in *Townsend Ford* remains the *final* statement of Alabama law governing the interpretation of contractual exclusions found in commercial general liability insurance policies.

*Townsend Ford* is not so limited as to apply only to claims for breach of an *express* warranty, and not *implied* warranties.  In *Townsend Ford*, the Alabama Supreme Court avoided the express/implied distinction when it held that contractual exclusions in commercial general liability insurance policies traditionally do not apply to "warranty situations."  *Townsend Ford*, 656 So. 2d at 364.  The Court further held that insurers "can plainly provide in their policies that coverage for *breach of warranty claims* is excluded if they so choose."  *Id.* at 364–65 (emphasis supplied). The fact that the Court's *judgment* in *Townsend Ford* was limited to the *express warranty* before it does not undermine the Court's *holding* in support of that judgment.  To read *Townsend Ford* as applying only to express warranties is to ignore the crux of the Court's holding:  that is, that contractual exclusions traditionally apply to express *indemnity* and *hold-harmless agreements*, "whereby the liability itself was assumed."  *Id.* at 364.  As in the case of express warranties, implied warranties do not involve the assumption of liability.  Accordingly, this court declines to follow Judge DuBose's limitation of the holding of *Townsend Ford*.

At oral argument, the parties discussed the Alabama Supreme Court's characterization of the express warranty in *Townsend Ford* as "merely a representation."  *See id.*  It was argued that such a characterization indicates that the Court viewed the breach of express warranty claim in *Townsend Ford* as an action *ex*

*delicto*, closely resembling the tort of fraud, rather than an action *ex contractu*. That argument is unavailing. Justice Maddox, who authored the *Townsend Ford* opinion, stated in a prior opinion that breach of warranty claims, regardless of whether they be based upon express or implied warranties, are actions *ex contractu*. For example, in his concurring opinion in *Geohagen v. General Motors Corp.*, 279 So. 2d 436, 440 (1973) (Maddox, J., concurring), Justice Maddox wrote:

> Unquestionably, by adoption of the Uniform Commercial Code, the Legislature intended to provide, and did provide, consumer protection which was unavailable before in instances where products were not reasonably safe. However, in granting this consumer protection the Legislature used the word 'warranty,' which had acquired a special meaning in the field of products liability. While the Legislature knocked out the requirement of privity in product liability cases, horizontally and vertically, in my opinion, I do not think it changed the nature of the action for breach of warranty from *ex contractu* to *ex delicto*. In arriving at this belief, I recognize that there are decisions which hold that in products liability cases, regardless of the Form of the action, that the tort aspects of warranty call for the application of a tort rather than a contract rule in allowing recovery for wrongful death. But many cases have held to the contrary, on the ground that the gist of warranty has become contract, and it is not included within the wrongful death statutes. W. Prosser, Law of Torts 635, s 95 (4th ed. 1971). *See also*, Annotation: Action *ex contractu* for damages caused by death, 86 A.L.R.2d 316, 317 (1962), where it is stated:
>
> > 'While there is some authority to the contrary, it appears to be generally recognized that in absence of statute an action *ex contractu* is not the appropriate remedy to recover damages resulting from the death of another.'
>
> I believe Alabama has consistently recognized an action for

> breach of warranty to be contractual in nature. Consequently, I cannot
> interpret Section 2-318 of the Commercial Code to state that the breach
> of an express or implied warranty is an action *ex delicto* and therefore
> a 'wrongful act' under Alabama's Wrongful Death Statute.

*Geohagen*, 279 So. 2d at 441 (Maddox, J., concurring).

Owners also cites to *Gilbert Texas Construction v. Underwriters at Lloyd's London*, 327 S.W. 3d 118 (Tex. 2010), a case in which the Texas Supreme Court held that contractual exclusions in commercial general liability insurance policies are not limited to cases in which the insured expressly assumed the liability of a third party. *Id.* at 127–28 (abrogating *Lamar Homes, Inc. v. Mid-Continent Casualty Co.*, 242 S.W. 3d 1 (Tex. 2007)). This court acknowledges that there is a complicated split of authority among various state and federal courts on the interpretation of the "assumption of liability" language in contractual exclusions. *See North Star Mutual Insurance Co. v. Rose*, 27 F. Supp. 3d 1250, 1253 (E.D. Okl. 2014) ("There appears to be a split of authority on this issue, and Oklahoma law is not certain"). Even so, *this* court must apply *Alabama law*, as interpreted by the Alabama Supreme Court. Accordingly, this court declines to follow the Texas Supreme Court's holding in *Gilbert*.

Even so, Owners contends that APA *did assume* the liability of another entity in a contract, and that APA's liability to Wiese is predicated upon that contractual assumption of liability. Specifically, Owners contends that APA "entered into [a

31

consignment] agreement to serve as auctioneer for [FF Acquisition Corp. doing business as] Flexible Flyer, the seller [*sic*] [*i.e.*, manufacturer] of the go-cart at issue. Any liability that [APA] may have arises solely out of [that agreement]."[28]  In other words, Owners contends that Wiese's claim falls within the policy's contractual liability exclusion because APA may be held liable in the underlying action only because it entered into a consignment agreement with FF Acquisition Corp. doing business as Flexible Flyer.  Owners further contends that the Alabama Supreme Court's plurality opinion in *Alabama Powersport Auction, LLC v. Wiese*, 143 So. 3d 713 (Ala. 2013) (Parker, J., plurality opinion), necessitates a finding that APA assumed the liability of Flexible Flyer in the consignment agreement.[29]  That argument is not correct.

APA's assumption of the alleged liability of FF Acquisition Corp. doing business as Flexible Flyer arises as a matter of law, and not as the result of express language in the consignment agreement.  The contractual liability exclusion contained in Owners's policy states that Owners will not cover damages that the insured is obligated to pay "by reason of the assumption of liability *in a contract or agreement*." Doc. no. 20-5 (Policy No. 054617-38227830-07), at 2 (emphasis supplied).  To fall

---

[28] Doc. no. 17-1 (Owners's Reply Brief), at 5 (alterations supplied).

[29] *Id.* at 5–6.  At oral argument in the present action, counsel for Owners stated that the consignment agreement itself had not been discovered, because Alabama Powersport and Flexible Flyer were both in bankruptcy during discovery in the underlying action.

within that exclusion, APA's liability would have to be predicated upon the language of a contract or agreement expressly stating that APA assumed the liability of FF Acquisition Corp., or agreed to indemnify and hold that entity harmless. There is no evidence that the consignment agreement between APA and FF Acquisition Corp. contained such language.

In *Alabama Powersport,* the plurality opinion applied common law principles of agency in reaching the conclusion that, "in the eyes of the law," an auctioneer who fails to disclose its principal is liable under the UCC as a merchant-seller. 143 So. 3d at 723 (quoting *Abercrombie*, 541 So. 2d at 518). Significantly, the Court did not hold that an auctioneer, by entering into a consignment agreement with a seller, assumes the liability of that seller, as Owners contends. Instead, the Court held that an auctioneer's liability on a contract for the sale of goods at auction is predicated upon the auctioneer's behavior towards the buyer — *i.e.*, the auctioneer's failure to disclose its principal. The consignment agreement between APA and Flexible Flyer, therefore, is not the type of indemnity or hold-harmless agreement that traditionally falls within contractual exclusions found in commercial general liability insurance policies like the one at issue here. Accordingly, and absent any evidence to the contrary, this court concludes that APA's potential liability to James Wiese for breach of an implied warranty of merchantability is not predicated upon the company's

contractual assumption of Flexible Flyer's liability.  Stated differently, Owners has not met its burden of showing that the breach of implied warranty claim asserted in the underlying, state-court action falls within the Policy's "Contractual Liability" exclusion.  Accordingly, this court finds that Owners owes a duty to provide a defense for its insured, APA, in the underlying action.

2.    **The duty to indemnify**

The duty to defend is broader than the duty to indemnify, and the question of "[w]hether there is a duty to indemnify under the policy will depend on the facts adduced at the trial" in the underlying state-court action.  *Hartford Casualty Insurance Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1013 (Ala. 2005) (alteration supplied).  That case has not yet been tried.  Accordingly, this court cannot determine whether Owners owes a duty to indemnify APA.  For that reason, this court abstains from reaching the issue of Owners's duty to indemnify.  *Cf. Employers Mutual Casualty Co. v. Smith Construction & Development, LLC*, 949 F. Supp. 2d 1159, 1176 (N.D. Ala. 2013) (Hopkins, J.) ("abstain[ing] from reaching the duty to indemnify question, as the underlying action is still pending in state court") (alteration supplied).

### III.  CONCLUSION AND ORDERS

For all of the foregoing reasons, the motion for summary judgment filed by

plaintiff is DENIED, but the motion for summary judgment filed by defendant James Wiese is GRANTED in part and DENIED in part.  It is ORDERED, ADJUDGED, and DECREED pursuant to 28 U.S.C. § 2201 that Owners Insurance Company owes a duty under the terms of the commercial general liability insurance policy bearing Policy Number 054617-38227830-07, and issued to defendant Alabama Powersport Auction, LLC, to provide a defense for that defendant in connection with the claims asserted against it in the state court action pending in the Circuit Court of Limestone County, Alabama, as Civil Action No. 10-CV-900146 and styled "*James Wiese, as natural Father of Matthew Hunter Wiese, a Minor, Deceased v. Alabama Powersport Auction, LLC*."  The claim of defendant James Wiese seeking a declaration that plaintiff also owes a duty to indemnify Alabama Powersport Auction, LLC, in that state-court action is DISMISSED, but without prejudice to any party's right to reassert a similar claim in another action filed in a court of appropriate jurisdiction following the conclusion of trial in the underlying state-court suit and the expiration of all appeals, if any, from the trial court's judgment.

The costs of this action are taxed to plaintiff, Owners Insurance Company.  The Clerk is directed to close this file.

**DONE** and **ORDERED** this 28th day of May, 2015.

_____
United States District Judge